UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

TAMMY LORD, A/K/A LECLERC

v. Case No. 24-cv-00160-LM-TSM

PHH MORTGAGE CORPORATION

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Self-represented Plaintiff Tammy Lord ("Lord") a/k/a Tammy LeClerc and her husband, Steven LeClerc ("LeClerc"), own a home in Goffstown, New Hampshire. See Doc. No. 43 at ¶ 1. On June 3, 2024, they filed this action against their mortgage servicer, PHH Mortgage Corporation ("PHH"), claiming that PHH violated federal and state law in connection with its efforts to collect amounts due under their mortgage loan. Doc. No. 1. Plaintiffs subsequently dropped LeClerc as a party, thereby leaving Lord as the sole Plaintiff in this case. See Doc. No. 28; End. Order dated 12/15/2025. As described in the First Amended Complaint, Lord seeks to hold PHH liable for damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and its state analog, the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act ("UDUCPA"), RSA 358-C. Doc. No. 13. She also seeks an order enjoining PHH from foreclosing on her home while this case remains pending. Id. at pg. 17. The matter is before the court on the parties' cross-motions for summary judgment (Doc. Nos. 36 and 38). For all the reasons detailed below, this court recommends that the district judge grant PHH's motion for summary judgment and deny Plaintiff's cross-motion.

## SCOPE OF THE FACTUAL RECORD

Before turning to the factual background of this case, it is necessary to address Lord's challenge to the scope of the evidentiary record.[1] See Doc. No. 39 at pgs. 5-7; Doc. No. 39-1 at pgs. 1-6.[2] In connection with its motion for summary judgment, PHH filed various exhibits consisting of documents relating to Plaintiff's mortgage loan. See Doc. Nos. 36-4 through 36-6 and 36-8 through 36-15. It also filed a declaration from its litigation counsel, Donald W. Seeley, Jr., Esq., and an affidavit from Richard Schwiner, a Senior Loan Analyst for PHH's parent company. Doc. Nos. 36-3 and 36-7. Lord challenges the authenticity of certain documents, as well as their admissibility under the Federal Rules of Evidence. See Doc. No. 39 at pgs. 4-9; Doc. No. 39-1 at pgs. 1-6. She also challenges Mr. Schwiner's affidavit on the grounds that it consists of hearsay and conclusory assertions that are insufficient to support a motion for summary judgment. See Doc. No. 39 at pgs. 5-7. PHH argues that all of the challenged material is authentic

---

[1] A motion to strike is the appropriate vehicle for challenging evidence submitted in connection with a motion for summary judgment. See Casa Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994) ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are deemed waived and a court may consider the affidavit."); McIntyre v. United States, No. 01-CV-10408-RCL, 2006 WL 8458066, at *2 (D. Mass. May 18, 2006) ("A motion to strike is an appropriate procedural vehicle for a party's attacks on summary judgment exhibits."). Here, Lord failed to file a motion to strike in support of her challenges to the scope of the evidentiary record. Nevertheless, given Lord's emphasis on this issue in opposition to PHH's motion for summary judgment and in response to PHH's statement of material facts, see Doc. No. 39 at pgs. 5-7; Doc. No. 39-1 at pgs. 1-6, as well as her status as a self-represented litigant, this court finds it appropriate to address her arguments.

[2] Unless otherwise indicated, citations to page numbers refer to the court's CM/ECF numbering system on the top of the documents.

and admissible and that the court may consider it as part of the record on summary judgment. Doc. No. 40 at pgs. 4-6. This court finds that the materials at issue are properly before the court.

When considering a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial." Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993). However, if a party fails to present evidence in a form that would be admissible in evidence, the court may not rely on it. See id. ("inadmissible evidence may not be considered" on summary judgment); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "In order to be admissible at trial, a document must be authenticated." Goguen ex rel. Estate of Goguen v. Textron, Inc., 234 F.R.D. 13, 16 (D. Mass. 2006). "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). PHH's evidentiary submissions satisfy these requirements.

***Authenticity of PHH's Documents***

In support of its motion for summary judgment, PHH submitted, among other materials, certified copies of documents relating to Lord's mortgage loan, including a certified copy of the mortgage executed by Plaintiff and her husband and certified copies of two assignments purporting to transfer the mortgage from one entity to another. See Doc. Nos. 36-4 through 36-6. As described in the accompanying Declaration of Donald W. Seeley, Jr., Esq. and as set forth in the documents themselves, each of these materials was recorded in the Registry of Deeds for Hillsborough County, New Hampshire. Doc. No. 36-3 at ¶ 4(a)-(c); Doc. No. 36-4 at pg. 20; Doc. No. 36-5 at pg. 2; Doc. No. 36-6 at pg. 3. Under Rule 902 of the Federal Rules of Evidence, a certified "copy

of a document that was recorded or filed in a public office as authorized by law" is "self-authenticating [and] require[s] no extrinsic evidence of authenticity in order to be admitted" into evidence. Fed. R. Evid. 902(4). Because the mortgage and both the assignments were recorded in the Registry of Deeds, they "are squarely 'self-authenticating' documents" that are admissible at trial. U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Moore, No. 2:19-cv-00157-JAW, 2022 WL 474702, at *7-8 (D. Me. Feb. 16, 2022).

Authenticating documents that are not self-authenticating "is rarely onerous" and "in many instances, a single sentence will suffice, indicating that the document is what it appears to be." Goguen, 234 F.R.D. at 16-17; see also Fed. R. Evid. 901(b)(1) (listing testimony from a witness with knowledge that "an item is what it is claimed to be" as an example of evidence that is sufficient to support a finding of authenticity). In the instant case, Mr. Schwiner authenticated PHH's remaining exhibits by testifying in his affidavit that each document is what it purports to be. See Doc. No. 36-7 at ¶¶ 2, 7, 9, 11-12, 14-15. He also stated that he is competent to testify on the matters contained in his affidavit, and that his testimony is based on personal knowledge, including his personal knowledge of PHH's procedures for creating such documents and his examination of documents that PHH acquired from prior servicers of Plaintiff's mortgage loan. Id. at ¶¶ 1, 4-6. Accordingly, Lord's challenge to the authenticity of PHH's exhibits is misplaced.

***Admissibility of PHH's Evidence***

Lord's challenge to the admissibility of PHH's evidence fares no better. See Doc. No. 39 at pgs. 5-7; Doc. No. 39-1 at pgs. 1-6. "As public records," the mortgage and both assignments are "admissible under Rule 803(14)[,] which allows the admission of a record of a document that affects an interest in property if the record is admitted to prove the contents of the original document, the record is kept in a public office, such as the Registry of Deeds, and a statute

authorizes recording documents of that kind in that office." Moore, 2022 WL 474702, at *8 (citing Fed. R. Evid. 803(14)). In fact, Lord relies on each of these documents in support of her own motion for summary judgment. See Doc. No. 38-2 at ¶¶ 2, 9, 12, 15, 51. Accordingly, there is no basis for the court to disregard the mortgage or the assignments, or to strike them from the record.

To the extent Lord challenges the admissibility of Mr. Schwiner's testimony and the exhibits attached to his affidavit, her challenge to this evidence is similarly unpersuasive. PHH contends that the evidence is admissible under Rule 803(6) of the Federal Rules of Evidence, and that Mr. Schwiner's Affidavit "attests to the foundational information required by Fed. R. Evid. 803(6)." Doc. No. 40 at pg. 6. This court agrees.

"Rule 803(6), known as the business records exception, authorizes the admission of certain documents under an exception to the usual prohibition against the admission of hearsay statements, that is, statements by an out-of-court declarant offered into evidence to prove the truth of the matter asserted." U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Jones, 925 F.3d 534, 537 (1st Cir. 2019). Under Rule 803(6):

> a record may be admitted for the truth of its contents if: (A) the record was made by "someone with knowledge" of its contents; (B) the record "was kept in the course of a regularly conducted activity" of a business or organization; (C) it was that organization's "regular practice" to make the record; (D) these first three requirements "are shown by the testimony of the [organization's] custodian or another qualified witness"; and (E) the opponent fails to show "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Estes v. ECMC Grp., Inc., 565 F. Supp. 3d 244, 254 (D.N.H. 2021) (alteration in original) (quoting Fed. R. Evid. 803(6)(A)-(E)).

Mr. Schwiner's affidavit satisfies requirements (A) through (D). Mr. Schwiner states that he is a Senior Loan Analyst for PHH's parent company and an authorized signatory of PHH. Doc. No. 36-7 at ¶ 2. He also states that the information contained in his affidavit, including his

description of the documents attached thereto, comes from PHH's business records, and that he has "personal knowledge of PHH's procedures for creating these records." Id. at ¶ 5. Additionally, Mr. Schwiner avers that

> PHH's business records are: (a) made at or near the time of the occurrence of the matters recorded by persons who are engaged in the business and who have personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge through established procedures for the routine, habitual, systematic making of such a record; (b) kept, made and maintained in the course of PHH's regularly conducted business activities; and (c) created so they may be relied upon as being accurate. It is the regular practice of PHH to make and keep such records.

Id. Furthermore, to the extent the records were created by a prior loan servicer rather than by PHH, Mr. Schwiner testifies that he "acquired personal knowledge of the matters stated herein by personally examining" the prior servicers' records, "including the loan origination and servicing files and servicing records arising out of and/or related to the subject loan." Id. at ¶ 6. He also explains as follows with respect to such records:

> To the extent that the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into PHH's system, such that the prior servicer's records concerning the loan are now part of PHH's business records. PHH maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. It is the regular practice of PHH to integrate prior servicers' records into PHH's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions.

Id.

Nevertheless, Lord argues that PHH's reliance on Mr. Schwiner's testimony is misplaced because Mr. Schwiner was not personally involved in the creation or execution of the documents and because he lacks sufficient knowledge regarding records from prior loan servicers to establish

the admissibility of the documents in this case. See Doc. No. 39 at pg. 5. Thus, Lord contends that Mr. Schwiner:

> did not originate the loan, did not execute the assignments, did not witness any endorsements or allonges, and does not claim personal knowledge of the underlying transfers, nor does the affidavit describe when or how the original instrument came into the asserted custodian's possession. Instead, the affidavit is based on boarded records from prior servicers, layered with assumptions about agency and authority. The affiant relies on integrated records from prior servicers but does not establish personal knowledge of the creation of the original records, nor does he address documented gaps in servicing history.

Id.

These arguments are unpersuasive. As an initial matter, it is well established that a witness upon whom a party relies to establish the foundation for the business records exception "need not be the person who actually prepared the record." Deutsche Bank Nat'l Tr. for IXIS 2006-HE3 v. Moynihan, 270 F. Supp. 3d 497, 514 (D. Mass. 2017) (quoting Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985)). "Moreover, the business records exception does not require testimony by some witness associated with the predecessor entity when the records become part of the records of a successor entity." Id. (quotations and citation omitted). "Rather, a 'qualified witness' is 'simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.'" Jones, 925 F.3d at 538 (quoting Wallace Motor Sales, 780 F.2d at 1061). Here, Mr. Schwiner provided sufficient testimony regarding PHH's handling and maintenance of its records, as well as its system for integrating records from prior servicers, to demonstrate that he is a qualified witness for purposes of Rule 803(6). See id. (finding that witness "was 'qualified' within the meaning of Rule 803(6)" where she "provided

detailed testimony regarding how [defendant's loan servicer] maintained its records . . . and how it verified the accuracy of the records it got from other servicers[.]").

With respect to Lord's challenge to the admissibility of documents from prior loan servicers, "there is no categorical rule barring the admission of integrated business records under Rule 803(6) based only on the testimony from a representative of the successor business." Id. Rather, "[t]he key question" for purposes of admissibility under the business records exception is "whether the records in question are 'reliable enough to be admissible.'" Id. at 538 (quoting FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010)). In the instant case, the records in question are sufficiently reliable to be considered on summary judgment. As Mr. Schwiner described in his affidavit, PHH integrated and boarded the prior servicers' records into its own system, such that the prior servicers' records relating to Lord's mortgage loan "are now part of PHH's business records." Doc. No. 36-7 at ¶ 6. As part of this process, PHH used quality control and verification procedures "to ensure the accuracy of the boarded records." Id. Additionally, as illustrated below in this court's description of the relevant factual background, PHH "rel[ies] upon the accuracy of those boarded records in providing its loan servicing functions" and in its efforts to enforce Lord's obligations under the terms of her mortgage. Id. The First Circuit has affirmed the admission of business records containing materials from a prior loan servicer where, as here, the current loan servicer "incorporated the previous servicer's records into its own database and placed its own financial interest at stake by relying on those records," and where the current loan servicer "took steps to review the previous servicer's records in a way that assured itself of the accuracy of those records." Jones, 925 F.3d at 538 (brackets, quotations and citations omitted). Notably, Lord does not challenge the accuracy of the records created by prior loan servicers in this

case. For all these reasons, this court concludes that PHH's exhibits are admissible as business records under Rule 803(6).

***Existence of Conclusory Statements***

Finally, this court disagrees with Lord's argument that Mr. Schwiner's testimony is conclusory or otherwise insufficient to support PHH's motion for summary judgment. See Doc. No. 39 at pgs. 6-7. The information contained in his affidavit is based on his review of PHH's business records and reflects factual information contained in those records. See Doc. No. 36-7 at ¶¶ 5, 7-12, 14-15. Moreover, this court is capable of reviewing the documents on which Mr. Schwiner relies and drawing its own conclusions from the evidence. Accordingly, there is no adequate basis for disregarding his affidavit or any of the documents that PHH submitted in support of its motion for summary judgment.

**FACTUAL BACKGROUND**

The following facts, which are relevant to the parties' motions for summary judgment, are undisputed unless otherwise indicated.[3]

***Plaintiff's Mortgage Loan***

Plaintiff owns real property located at 49 Church Street in Goffstown, New Hampshire (the "Property"). Doc. No. 43 at ¶ 1. On or about June 13, 2005, Lord and her husband, Steven

[3] The facts are derived from the following evidence filed by the parties in connection with their motions for summary judgment: (1) the Statement of Material Facts in Support of PHH Mortgage Corporation's Motion for Summary Judgment (Doc. No. 36-2); (2) the Declaration of Donald W. Seeley Jr. (Doc. No. 36-3) and Exhibits A-C thereto (Doc. Nos. 36-4 through 36-6); (3) the Affidavit of Richard Schwiner (Doc. No. 36-7) and Exhibits 1-8 thereto (Doc. Nos. 36-8 through 36-15); (4) Plaintiff's Statement of Undisputed Material Facts (Doc. No. 38-2); (5) Plaintiff's Declaration in Support of Summary Judgment (Doc. No. 38-3); (6) Plaintiff's Exhibits A-J (Doc. Nos. 38-5 through 38-14); (7) Plaintiff's Response to Defendant's Statement of Material Facts (Doc. No. 39-1); (8) Plaintiff's Declaration in Support of Opposition to Defendant's Motion for Summary Judgment (Doc. No. 39-2) and Exhibits A-G thereto (Doc. Nos. 39-4 through 39-10); (9) PHH Mortgage Corporation's Response to Plaintiff's Statement of Undisputed Material Facts

LeClerc, executed a promissory note (the "Note") in exchange for a loan in the principal amount of $286,000 from New Hampshire Accredited Home Lenders. Doc. No. 36-9. Pursuant to the Note, Lord and LeClerc agreed to make monthly payments in the amount of $1,874.05 beginning on August 1, 2005. Id. at pg. 2. They further agreed to make those payments until all principal and interest, and any other charges that may be owed under the Note, were paid in full. Id.

To secure their obligations under the Note, Plaintiff and LeClerc granted a mortgage (the "Mortgage") on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for New Hampshire Accredited Home Lenders and its successors and assigns.[4] Doc. No. 36-4. The Mortgage provided in relevant part as follows:

---

(Doc. No. 43); and (10) Plaintiff's Supplemental Declaration Regarding Exhibits A-C attached thereto (Doc. No. 44 at pgs. 12-35). However, the court has not credited assertions that a fact cannot be or is genuinely disputed unless those assertions are supported by citations to evidentiary materials contained in the record. See Fed. R. Civ. P. 56(c)(1)(A). Nor does the court afford evidentiary weight to any "conclusory allegations, empty rhetoric, [or] unsupported speculation" contained in a party's statement of material facts or response to the opposing party's statement of material facts. Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)).

[4] As the First Circuit explained in Culhane v. Aurora Loan Servs. of NE, 708 F.3d 282 (2013):

> MERS was formed by a consortium of residential mortgage lenders and investors desiring to streamline the process of transferring ownership of mortgage loans in order to facilitate securitization. Various entities involved in the residential mortgage lending business can become "members" of MERS. As such, they pay an annual fee and agree to the rules of membership. Lender members may name MERS as mortgagee in mortgages that they originate, service, or own.
>
> MERS's mortgagee status is narrowly circumscribed: it acts solely as "nominee" for the owner or servicer of the mortgage, including the owner's or servicer's successors and assigns. There is one condition: the party for whom MERS serves as nominee must be a member of MERS. The upshot of this arrangement is that MERS holds the legal title to the mortgage as mortgagee of record, but it does not have any beneficial interest in the loan.
>
> MERS maintains an electronic database cataloguing the mortgages that it holds. This database tracks the identities of the noteholders and servicers of the underlying

> [t]his Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with mortgage covenants, and with power of sale, the [Property]
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . .

Id. at pg. 3. The Mortgage was recorded in the Hillsborough County Registry of Deeds on June 22, 2005. Doc. No. 36-7 at ¶ 9. Records from the New Hampshire Department of State's office show that New Hampshire Accredited Home Lenders ceased operations in 2009 and was administratively suspended in February 2013. See Doc. No. 43 at ¶ 23 (citing Doc. No. 13-9 at pgs. 2-5).

On or about June 10, 2009, Lord and LeClerc received a letter from their mortgage loan servicer, Homecomings Financial, LLC, notifying them that the servicing of their mortgage loan was "being assigned, sold, or transferred from Homecomings Financial, LLC ('Homecomings Financial') to GMAC Mortgage, LLC (GMAC Mortgage), effective July 1, 2009." Doc. No. 38-

---

> loans. When a note is sold by one MERS member to another, the sale is memorialized in the MERS database, and MERS remains the mortgagee of record.
>
> If a note within the MERS system is sold to a nonmember, MERS assigns the mortgage to the new noteholder or its designee. MERS's involvement ends at that point. To expedite the execution of assignments, MERS designates "certifying officers." These "certifying officers" are typically employees of member firms. MERS authorizes these persons, through formal corporate resolutions, to execute assignments on its behalf. This system reduces paperwork and avoids fees that otherwise would be required to record assignments of mortgages at local recording offices. Similarly, it facilitates the bundling and securitization of loans.

Culhane, 708 F.3d at 287 (internal citation omitted).

8 at pg. 6. In the letter, Homecomings Financial informed Lord and LeClerc that GMAC Mortgage and Homecomings Financial were affiliated companies, and that the only change to their account would be the name of their loan servicer. Id. It also informed them that the principal balance remaining on their Mortgage as of June 4, 2009, was $273,338.75, and that their total monthly payment was $1,874.05. Id. Although PHH was unable to locate documents reflecting the full transaction history of Plaintiff's account dating back to origination of the loan, such as documents reflecting the transfer or delegation of servicing authority from New Hampshire Accredited Home Lenders to Homecomings Financial, Lord does not dispute that Homecomings Financial and GMAC Mortgage had authority to service her mortgage loan. See Doc. No. 38-8 at pgs 3-5; Doc. No. 43 at ¶¶ 18-19.

Several years later, on or about February 7, 2013, Lord and LeClerc received a letter from GMAC Mortgage informing them that the right to service the Mortgage and collect payments from them was transferring to a new servicer, Ocwen Loan Servicing, LLC ("Ocwen"), effective February 16, 2013. Doc. No. 36-11 at pg. 2. The letter included loan account details showing that Lord and LeClerc had a principal balance of $257,664.11 remaining on their mortgage loan and that their monthly mortgage payment remained $1,874.05. Id. Plaintiff does not dispute that Ocwen had authority to service the Mortgage and collect her home mortgage loan payments at that time.

In October 2018, Ocwen purchased PHH and PHH became a wholly owned subsidiary of Ocwen. Doc. No. 39-5 at pg. 6. In an effort to streamline its servicing operations, Ocwen accounts were transitioned to the PHH servicing system for servicing under PHH's name. Id. at pgs. 6-7. Accordingly, on March 12, 2019, Ocwen sent Lord and LeClerc a letter informing them that Ocwen "has joined forces with PHH Mortgage Services" and "will be consolidating all mortgage accounts

into one company, PHH Mortgage Services ('PHH')." Doc. No. 36-12 at pg. 2 (emphasis omitted). In the letter, Ocwen further explained that effective April 1, 2019, "PHH will be the new servicer for this account and will be collecting the mortgage payments going forward." Id. Ocwen noted that "the account number will change" due to the transfer of the servicing rights, but it emphasized that "[t]he transfer of servicing does not affect any term or condition of the mortgage other than terms directly related to the servicing of the account." Id. at pgs. 2, 4.

On April 8, 2019, PHH sent a letter to Lord and LeClerc in which it confirmed that it became responsible for servicing their Mortgage effective April 1, 2019, that "the account number will change[,]" and that the transfer of responsibility from Ocwen to PHH "does not affect any term or condition of the [M]ortgage other than terms directly related to the servicing of the account." Doc. No. 36-13 at pgs. 2, 4. In an addendum to the letter, PHH informed Plaintiff and her husband that as of April 1, 2019, the principal balance due on their account was $220,607.80, and "the current required monthly payment in connection with this account is $1,874.05." Id. at pg. 5. The letter also included a document entitled, "Mortgage Account Record FDCPA Validation of Debt." Id. at pg. 8. Therein, PHH informed Lord and LeClerc that its records reflected unpaid debt in the amount of $216.01. Id. It is undisputed that as of April 1, 2019, when PHH acquired the servicing rights to Plaintiff's Mortgage, Lord and LeClerc were in default on their mortgage loan. Doc. No. 43 at ¶ 4.

In its April 8, 2019 correspondence to Plaintiff, PHH identified itself as "a debt collector attempting to collect a debt[,]" and noted that "any information obtained will be used for that purpose." Doc. No. 36-13 at pgs. 2-9. It also described Lord's and LeClerc's mortgage account as "the Debt" and identified "RASC 2005-AHL1" as the "Creditor." Id. at pg. 8. The record

indicates that RASC 2005-AHL1 is a securitized investment trust.[5] Doc. No. 39-5 at pg. 7 (letter describing Plaintiff's mortgage account as "one of many in a securitized investment trust, Residential Asset Securities Corporation ["RASC"], Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL1(S3H)."). Notably, at the time PHH began servicing the Mortgage and engaging in debt collection activity against Plaintiff, MERS continued to hold the Mortgage and remained the mortgagee with respect to the Property. See Doc. No. 36-5; Doc. No. 43 at ¶ 9.

***Assignments of Plaintiff's Mortgage***

In 2020, Nationwide Title Clearing ("Nationwide") prepared an Assignment of Mortgage (the "2020 Assignment"), dated May 1, 2020, on PHH's behalf. Doc. No. 36-5; Doc. No. 39-5 at pg. 7; Doc. No. 43 at ¶ 20. The 2020 Assignment provided in relevant part as follows:

> **FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NEW HAMPSHIRE ACCREDITED HOME LENDERS, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-AHL1, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Doc. No. 36-5 at pg. 1. It then described the Mortgage, including the date of the Mortgage, the signatories to the Mortgage, the identity of the mortgagee, the address of the Property, and the

[5] It is undisputed that the RASC 2005AHL1 Trust was registered with the Securities and Exchange Commission ("SEC") in 2005. See Doc. No. 43 at ¶ 48. However, on January 20, 2006, the Trust filed a "Certification and Notice of Termination of Registration" indicating that it was no longer registered with the agency. See Doc. No. 38-13 at pg. 3; Doc. No. 43 at ¶ 47.

recording of the Mortgage in the Hillsborough County, New Hampshire Registry of Deeds.[6] Id. Tracy Rogers, the Vice President of Nationwide, executed the Assignment on MERS' behalf before a notary public. See id.; Doc. No. 39-5 at pg. 7. The 2020 Assignment was recorded in the Registry of Deeds for the County of Hillsborough, New Hampshire on May 1, 2020. Doc. No. 36-5 at pg. 1. As detailed below, the parties dispute the validity of the 2020 Assignment and whether MERS effectively transferred the Mortgage to U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL1 ("RASC Series 2005-AHL1"). See Doc. No. 38-2 at ¶¶ 20-22, 25; Doc. No. 39-1 at pgs. 2-3; Doc. No. 40 at pg. 5; Doc. No. 43 at ¶¶ 20-22, 25.

As a result of the 2020 Assignment, PHH became the servicer for U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, with respect to Plaintiff's Mortgage. See Doc. No. 44 at pg. 20. On or about February 2023, Lord received an invoice from PHH's attorneys at Korde & Associates, P.C. reflecting attorney's fees for work relating to the issue of foreclosure. See id. at pgs. 13, 19-20. In a notice accompanying the invoice, the attorneys informed Plaintiff as follows:

> **Korde & Associates, P.C. is a law firm which may be deemed a debt collector.** PHH Mortgage Corporation as servicer for U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL1 referred your loan for foreclosure proceedings. We will use any information you give us to enforce its rights under its mortgage which may include collection of a debt.

Id. at pg. 20. The attorneys also informed Plaintiff that U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1 was the current creditor with respect to their mortgage loan. Id.

[6] Although the 2020 Assignment does not reference the loan number or account number of Lord's and LeClerc's mortgage loan, Doc. No. 43 at ¶ 12, there can be no genuine question, based on the description of the Mortgage, that the 2020 Assignment pertained to the Mortgage at issue in this case. See Doc. No. 36-5 at pg. 1.

At some point thereafter, U.S. Bank Trust Company, National Association, as Trustee ("U.S. Bank as Trustee"), became the successor-in-interest to U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1. See Doc. No. 36-8 at pg. 16. On June 1, 2023, PHH became the attorney-in-fact, as well as the loan servicer, for U.S. Bank as Trustee, as successor-in-interest to U.S. Bank National Association as Trustee for RASC Series 2005-AHL1. See Doc. No. 36-7 at ¶ 2; Doc. No. 36-8 at pgs. 2-5, 16. Subsequently, on November 14, 2023, U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, assigned Lord's and LeClerc's Mortgage to U.S. Bank as Trustee, as "Successor-in-Interest to U.S. Bank National Association, as Trustee for [RASC Series 2005-AHL1]" (the "2023 Assignment").[7] Doc. No. 36-6 at pg. 1. The 2023 Assignment was recorded in the Hillsborough County, New Hampshire Registry of Deeds on November 15, 2023. Id.

***Transfers of the Note***

PHH maintains that U.S. Bank as Trustee currently holds the Note, which it obtained through a series of endorsements and allonges. Doc. No. 36-2 at ¶ 5. The first allonge, which is undated, identifies Lord and LeClerc as the "Mortgagee" even though the record demonstrates that they are the "mortgagors" with respect to the Mortgage.[8] Doc. No. 36-9 at pg. 5; see also Doc.

---

[7] Lord argues that "PHH produces no document explaining when or how [U.S. Bank as Trustee's] successor status arose, nor any merger certificate, appointment instrument, or corporate record supporting the claimed succession." Doc. No. 44 at pg. 8. She further notes that PHH failed to explain why the 2023 Assignment was necessary if U.S. Bank as Trustee was already a successor-in-interest to U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1 in June 2023. Id. However, Lord does not explain why such information is necessary or how the absence of such information defeats PHH's motion for summary judgment. See id. As described below, this court finds that PHH is entitled to judgment as a matter of law based on the undisputed facts contained in the present record.

[8] The designation of Lord and LeClerc as the "Mortgagee" on the first allonge to the Note appears to be a clerical error. See Doc. No. 36-9 at pg. 5. It is undisputed that Lord and LeClerc were the

No. 36-4 at pgs. 1, 14 (describing "Borrower" as "the mortgagor" under the Mortgage and listing Lord and LeClerc as the "Borrower[s]" thereunder). It also identifies the loan number, the address of the Property, and a loan amount of $286,000.00. Doc. No. 36-9 at pg. 5. The allonge contains two endorsements, the first of which bears the signature of Linda L. Chen-Luke, who is identified as the Assistant Secretary of New Hampshire Accredited Home Lenders, and conveys the Note to Residential Funding Corporation. Id. The second endorsement, which is signed by "Judy Faber, Vice President," conveys the Note from Residential Funding Corporation to "U.S. Bank National Association, as Trustee." Id. Plaintiff challenges the authenticity of the allonge and the signatures appearing therein. See Doc. No. 38-2 at ¶¶ 35-36; Doc. No. 39-1 at Resp. to SOF ¶ 5. She also challenges Ms. Chen-Luke's authority to sign the allonge on behalf of New Hampshire Accredited Home Lenders, as well as Ms. Faber's authority to sign the allonge on behalf of Residential Funding Corporation. See Doc. No. 38-2 at ¶¶ 29-34. PHH opposes these challenges and contends that they are insufficient to create a disputed issue of fact regarding the conveyance of the Note to U.S. Bank National Association as Trustee. See Doc. No. 42 at pgs. 7-8; Doc. No. 43 at ¶¶ 29-30, 33-36.

A second allonge, which is also undated, contains an endorsement conveying the Note from U.S. Bank National Association as Trustee to "U.S. Bank National Association, as Trustee for [RASC], Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL1." Doc. No. 36-9 at pg. 6. It includes the date of the original Note, the loan number, and the address of the Property. Id. It also provides that "[t]his endorsement is a permanent part of the Note in the amount of $286,000.00." Id. Additionally, the allonge identifies the borrowers as Lord and

---

mortgagors with respect to the mortgage loan at issue in this case. See Doc. No. 36-10 at pg. 2 (identifying Plaintiff and LeClerc as "the mortgagor" under the Mortgage).

LeClerc, and is signed by Michael G. Patluk, Vice President of U.S. Bank National Association as Trustee. Id.

A third and final allonge contains an endorsement in blank, which is executed by Ernie A. Stephens, Senior Servicing Operations Specialist, on behalf of U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1. Doc. No. 36-9 at pg. 7. It contains the loan number, the date of the original Note, the address of the Property and the borrowers' names. Id. Furthermore, it provides that "[t]his endorsement is a permanent part of the Note in the amount of $286,000.00." Id. As in the case of the earlier allonges, the third allonge is undated. Id.

The parties vigorously dispute the validity and effectiveness of the allonges. See Doc. No. 36-1 at pgs. 10-11; Doc. No. 38-1 at pgs. 7-9; Doc. No. 39 at pgs. 7-9; Doc. No. 42 at pgs. 7-8; Doc. No. 44 at pgs. 5-6. They also dispute PHH's right to enforce the Note on behalf of U.S. Bank as Trustee on other grounds. See Doc. No. 38-1 at pg. 9; Doc. No. 39 at pgs. 8-12; Doc. No. 42 at pgs. 8-10; Doc. No. 44 at pgs. 6-8. Because this court concludes that these issues do not need to be resolved in order to rule on the present motions, it is not necessary at this time to detail the facts relating to the parties' arguments.[9]

***The Acceleration Notice***

In a letter dated November 21, 2023 (the "Acceleration Notice"), PHH's attorneys at Korde & Associates, P.C. notified Lord and LeClerc that their mortgage loan was in default and that they failed to cure the default. Doc. No. 36-14 at pg. 3. The attorneys also informed Lord and LeClerc that "the Mortgagee has accelerated the entire indebtedness[,]" declared "the entire balance due and payable forthwith[,]" and intended "to foreclose the Mortgage under the Power of Sale for

---

[9] This court is prepared to address the parties' disputes regarding the Note in the event the district judge declines to adopt this Report and Recommendation.

breach of the conditions of the loan documents" unless the borrowers sought to reinstate the Mortgage or pay off the loan. Id. Significantly, as Korde & Associates explained in its letter:

> [i]f you would like to reinstate or pay off your loan, please contact this office and we will request a reinstatement or pay-off quote for your loan from the Mortgage Servicer. However, please also be advised that the Mortgagee reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

Id.

On May 17, 2024, PHH responded to Lord's and LeClerc's request for a reinstatement quote for their account. Doc. No. 36-15. In a letter entitled "Reinstatement Quote," PHH provided a breakdown of the total amount needed to reinstate Plaintiff's mortgage account, as well as a list of other amounts that remained outstanding on the account. Id. at pgs. 3-4. PHH informed Lord and LeClerc that the total amount required to reinstate the account was due by June 16, 2024, and that if funds were not received by that time, "additional funds may be required to fully reinstate the account." Id. at pg. 4 (emphasis omitted). Additionally, PHH warned Plaintiff that "[i]f the [M]ortgage is not reinstated and the payments fall farther behind, we may refer this mortgage to foreclosure. If the account is already in foreclosure, we may continue with the foreclosure proceedings." Id. at pg. 5.

The final page of the May 17, 2024 letter contained a list of "Important Notices." Id. at pg. 6. Therein, PHH stated in relevant part as follows: "[p]lease also note, notwithstanding the good-through date expressed on this reinstatement quote, if a Notice of Acceleration is sent for this account, reinstatement funds will no longer be accepted after such notice has been sent." Id. Lord alleges that:

> [t]his notice that the reinstatement payment would no longer be accepted after a notice of acceleration was served upon borrowers, is deceptive and misleading because PHH had already instructed its attorney to "accelerate the entire

> indebtedness and declare the entire balance due and payable forthwith and without further notice" by letter dated November 21, 2023, . . . six months earlier.

Doc. No. 13 at ¶ 48. However, PHH contends that this argument misinterprets both the November 21, 2023 Acceleration Notice and the relevant language of the May 17, 2024 Reinstatement Quote, and that Lord fails to support a valid claim against it based on these communications. See Doc. No. 36-1 at pg. 13.

It is undisputed that Lord and LeClerc did not reinstate their account. Doc. No. 39-1 at Resp. to SOF ¶ 11. Instead, they brought this action against PHH on June 3, 2024. Doc. No. 1. After the lawsuit was filed, PHH canceled a previously scheduled foreclosure and has not re-noticed or re-scheduled a foreclosure sale of the Property. See Doc. No. 13 at ¶¶ 9-10; Doc. No. 14 at ¶¶ 9-10.

Additional factual details relevant to this court's analysis are included below where appropriate.

## LEGAL STANDARD

Each of the parties moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party[.]'" Taite v. Bridgewater State Univ. Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case[.]'" Id. (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).

"Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'" Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (quoting Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)). The court must view "the record and all reasonable inferences therefrom in the light most favorable to the non-moving part[y]." Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) (quoting Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011)). "'[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative' will not suffice to ward off a properly supported summary judgment motion." Id. (alteration in original) (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)).

"Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." Estate of Hevia, 602 F.3d at 40. Accord TRT Dev. Co., Inc. v. ACE Am. Ins. Co., 566 F. Supp. 3d 118, 123 (D.N.H. 2021) ("On cross-motions for summary judgment, the standard of review is applied to each motion separately."). Accordingly, "[c]ross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## DISCUSSION

The First Amended Complaint contains two Counts. In Count One, Lord seeks to hold PHH liable for violations of the FDCPA, 15 U.S.C. § 1692. Doc. No. 13 at Count One. In Count

Two, Lord seeks to hold PHH liable under the UDUCPA, RSA 358-C, the New Hampshire state analog to the FDCPA. Id. at Count Two. "Both statutes prohibit a broad range of conduct by debt collectors." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 123 (D.N.H. 2012). To prevail on a claim under either the FDCPA or the UDUCPA, Lord must establish that: "(1) [she has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [Act]." Id. at 124 (second alteration in original) (quoting Beadle v. Haughey, No.Civ.04-272-SM, 2005 WL 300060, at *2 (D.N.H. Feb. 9, 2005)).

In the instant case, PHH does not dispute that it was acting as a debt collector at all relevant times and was engaged in collection activity against Lord arising from a consumer mortgage loan. See Doc. No. 36-1 at pgs. 5-14. At issue is whether PHH engaged in prohibited conduct or failed to satisfy its statutory obligations. Lord claims that PHH violated the FDCPA and the UDUCPA by acting on U.S. Bank as Trustee's behalf to foreclose on the Property and otherwise engage in collection activities even though U.S. Bank as Trustee lacked authority to enforce the Mortgage or the Note. See Doc. No. 13 at ¶¶ 55-84, 96-101. She also claims that PHH violated the FDCPA by sending her a deceptive and misleading offer to reinstate her mortgage loan. Id. at ¶¶ 44-52. PHH argues that it is entitled to judgment as a matter of law with respect to each of these claims. See Doc. No. 36-1 at pgs. 5-14. Lord disagrees and argues that the court should enter summary judgment in her favor on her claims under the FDCPA and the UDUCPA. See Doc. No. 38-1 at pgs. 1-2.

## I. PHH's Authority to Enforce the Mortgage

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Additionally, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt[,]" including "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" 15 U.S.C. § 1692f(6)(A). Similarly, under the UDUCPA, "[n]o debt collector shall collect or attempt to collect a debt in an unfair, deceptive or unreasonable manner[,]" including by threatening "to take any unlawful action or action which the debt collector in the regular course of business does not take[.]" RSA 358-C:2; RSA 358-C:3(III). Lord claims that PHH violated each of these provisions by threatening to foreclose on the Property despite defects in the assignments purporting to transfer the Mortgage to U.S. Bank as Trustee.[10] See Doc. No. 13 at ¶¶ 55-56, 82-84, 99-101. In other words, Lord contends that the 2020 and 2023 Assignments were ineffective to transfer the

[10] In her opposition to Defendant's motion for summary judgment, Lord argues that PHH improperly conflates its authority to foreclose on the Mortgage and compliance with the FDCPA by assuming that "alleged foreclosure authority necessarily defeats FDCPA liability." Doc. No. 39 at pgs. 9-10. She further accuses PHH of attempting to "short-circuit" the FDCPA's consumer protection goals "[b]y collapsing the distinct questions of foreclosure authority and FDCPA compliance into a single legal issue[.]" Id. at pg. 11. Plaintiff's characterization of PHH's arguments is misplaced. As demonstrated in its memorandum in support of its motion for summary judgment, PHH's arguments are based on the allegations of the Amended Complaint and respond to Lord's articulation of her claims under the FDCPA and the UDUCPA. See, e.g., Doc. No. 36-1 at pgs. 5-7 (addressing Plaintiff's claim that PHH violated the FDCPA and the UDUCPA by engaging in foreclosure proceedings without holding a valid chain of title to the Mortgage.), 8-11 (addressing Plaintiff's claim that PHH violated the FDCPA and the UDUCPA by initiating foreclosure proceedings without holding the Note.). Nothing therein suggests that PHH conflated its authority to foreclose on the Property with its obligations under either of the statutes or that its arguments in favor of summary judgment are otherwise improper.

Mortgage to U.S. Bank as Trustee and, therefore, PHH acted unlawfully by threatening to enforce the Mortgage on U.S. Bank as Trustee's behalf. See id. at ¶¶ 56-71, 96-99; Doc. No. 38-1 at pgs. 5-6. PHH argues that these claims fail as a matter of law, and that the undisputed facts demonstrate that "U.S. Bank as Trustee is the mortgagee of the Mortgage pursuant to an unbroken chain of assignments that are facially valid and compliant with New Hampshire law." Doc. No. 36-1 at pg. 2. For the reasons that follow, this court concludes that PHH is entitled to judgment as a matter of law on this issue.

A. The Validity of the 2020 Assignment

The undisputed facts indicate that the Mortgage was transferred to U.S. Bank as Trustee as a result of two assignments: (1) the 2020 Assignment of the Mortgage from MERS, "as nominee for New Hampshire Accredited Home Lenders, its successors and assigns," to U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, Doc. No. 36-5 at pg. 1 (emphasis and capitalization omitted), and (2) the 2023 Assignment from U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1 to U.S. Bank as Trustee, "as successor-in-interest to U.S. Bank National Association, as Trustee for [RASC Series 2005-AHL1.]" Doc. No. 36-6 at pg. 1 (emphasis and capitalization omitted). Lord contends that the 2020 Assignment is ineffective for two reasons. First, she argues that the 2020 Assignment is void because the original lender, New Hampshire Accredited Home Lenders, was defunct at the time the Assignment took place and PHH produced no evidence that a successor entity existed or that MERS was acting on behalf of an existing principal at that time. Doc. No. 38-1 at pg. 5. Next, Lord argues that the 2020 Assignment is invalid because it was signed by Tracy Rogers, a Vice President of Nationwide Title Clearing, and PHH failed to produce any written document showing that Ms. Rogers had authority to act on MERS' behalf. Id. at pg. 6. However, PHH argues that MERS' right to hold and assign the

Mortgage was not undermined by the fact that New Hampshire Accredited Home Lenders ceased operations and was administratively suspended prior to the 2020 Assignment. See Doc. No. 42 at pgs. 5-6. It also contends that under New Hampshire law, the 2020 Assignment is valid on its face, and that Lord lacks standing to challenge its effectiveness. Id. at pgs. 6-7. This court concludes that the 2020 Assignment is valid and that MERS effectively assigned the Mortgage to U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1.

i. *The impact of a defunct principal on the validity of the 2020 Assignment*

Under the terms of the Mortgage, Lord expressly agreed to "mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS with mortgage covenants, and with power of sale, the [Property.]" Doc. No. 36-4 at pg. 3. She also acknowledged that MERS held "legal title to the interests granted by [her]" in the Mortgage. Id. Accordingly, "[t]he clear and unambiguous language of the Mortgage gave the plaintiff notice that both the original Lender [New Hampshire Accredited Home Lenders] and MERS could assign their interests." Bergeron v. N.Y. Cmty. Bank, 168 N.H. 63, 67 (2015).[11]

Lord nevertheless maintains that "[a]n assignment executed on behalf of a defunct principal, without proof of a successor or agency relationship, is void, not merely voidable." Doc. No. 38-1 at pg. 5. She further argues that the 2020 Assignment is void because "New Hampshire Accredited Home Lenders ceased operations in 2009 and was administrative suspended prior to the 2020 [A]ssignment[,]" and because PHH produced no evidence showing "that any successor entity existed at the time of the [A]ssignment" or "that MERS possessed authority to act on behalf

[11] The Mortgage provides in relevant part that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Doc. No. 36-4 at pg. 11 ¶ 16. The Property subject to the Mortgage is located in Goffstown, New Hampshire. Id. at pg. 3. Therefore, the Mortgage is subject to the laws of New Hampshire.

of any existing principal at the time of execution." Id. (citations omitted). However, Lord provides no legal authority to support the premise that the nominee of a defunct lender lacks authority to assign a mortgage and that any such assignment is void.[12] See Doc. No. 38-1 at pgs. 5-6. Courts considering similar arguments consistently reject them. See, e.g., Fustolo v. Select Portfolio Servicing, Inc., 123 F.4th 528, 532 (1st Cir. 2024) ("It is beyond dispute that MERS may hold and assign a legal interest in a mortgage. That remains true when MERS is a nominee of an original lender that has since dissolved as well as that lender's successors and assigns." (citations omitted)); Lewis v. Bank of N.Y. Mellon Tr. Co., N.A., No. 16-11122-FDS, 2016 WL 4555969, at *4 (D. Mass. Aug. 31, 2016) (listing cases in which courts rejected the argument that the dissolution of the original lender precluded MERS' ability to assign a mortgage); Almeida v. U.S. Bank Nat'l Ass'n, No. 12-11565-RWZ, 2014 WL 907673, at *3 (D. Mass. Mar. 10, 2014) ("That [original lender] may have ceased all operations nine months before the assignment is of no moment. The

[12] In support of her argument that MERS lacked authority to assign its interest in the Mortgage in 2020, Lord cites Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014) and Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 293 (1st Cir. 2013). Doc. No. 38-1 at pg. 5. However, neither of those cases supports Lord's assertion that the 2020 Assignment was void because MERS "was acting as a nominee for a dissolved corporation" at the time it executed the Assignment. See id. In Wilson, the First Circuit considered plaintiffs' challenge to MERS' assignment of their mortgage to defendant. See Wilson, 744 F.3d at 4. Specifically, plaintiffs claimed that the assignment was void because "it was executed not by MERS, but by [an employee of defendant] who falsely purported to sign on MERS's behalf." Id. Notably, however, plaintiffs did not allege or argue that the assignment was invalid because the lender dissolved or otherwise ceased operations. See id. at 4-14. Therefore, the Wilson court had no occasion to consider that issue. Culhane also involved a challenge to MERS's assignment of a mortgage. See Culhane, 708 F.3d at 288. In that case, "[t]he plaintiff's claim hinge[d] on the asseveration that MERS did not legitimately hold the mortgage" at the time it assigned the mortgage to the foreclosing entity because MERS held only "bare legal title as mortgagee of record" while "the noteholder alone enjoy[ed] the beneficial interest in the loan." Id. at 291. Accordingly, the plaintiff reasoned that MERS had nothing to assign to the defendant, thereby making the assignment invalid. Id. As in the case of Wilson, however, the plaintiff did not allege that MERS was acting in its capacity as the nominee of a defunct lender at the time of the assignment. See id. at 291-94. Nor did she argue that the assignment was void on that basis. See id. Accordingly, Culhane is inapposite to Lord's argument in this case.

dissolution of the original lender does not affect MERS' authority to assign a mortgage." (quotations and citations omitted)). Therefore, Lord cannot defeat summary judgment for PHH on the grounds that the original lender was defunct at the time of the 2020 Assignment.

ii. *Alleged defects in the 2020 Assignment*

Lord next argues that the 2020 Assignment is defective because it was prepared by Nationwide Title Clearing on PHH's behalf and was signed by Tracy Rogers, "acting as Vice President of Nationwide Title Clearing, not as an officer of MERS." Doc. No. 38-1 at pg. 6 (citation omitted). She also contends that PHH's failure to produce documentary evidence showing that Ms. Rogers had authority to execute the 2020 Assignment on MERS' behalf renders the Assignment void and ineffective. Id. PHH argues that the 2020 Assignment is valid on its face and that Lord lacks standing to challenge it on these grounds. Doc. No. 42 at pg. 6. This court finds that PHH is entitled to judgment as a matter of law on this issue.

Lord's assertion that Ms. Rogers lacked authority to sign the 2020 Assignment is inconsistent with the undisputed evidence. Although the record demonstrates that Ms. Rogers was a Vice President of Nationwide Title Clearing, Doc. No. 39-5 at pg. 7, the 2020 Assignment provides in relevant part that "[a]ll persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing." Doc. No. 36-5 at pg. 1. It also contains the following verification from a Notary Public:

> The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 01st day of May in the year 2020, by Tracy Rogers as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR NEW HAMPSHIRE ACCREDITED HOME LENDERS, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Id. On its face, therefore, the 2020 Assignment supports the conclusion that Ms. Rogers executed the Assignment on MERS' behalf and that she had authority to do so.

The record further demonstrates that Ms. Rogers' conduct in signing the 2020 Assignment on MERS' behalf was consistent with MERS' ordinary practices. As PHH explained in a letter to Lord and LeClerc dated January 23, 2024, "MERS does not complete assignments and authorizes signors to sign on their behalf. The completion of the assignments does not invalidate the loan." Doc. No. 39-5 at pg. 7. PHH further informed Plaintiff that all actions it took with respect to her mortgage loan were "in compliance with Federal, state, and local law." Id. Thus, the undisputed facts belie Lord's assertion that the 2020 Assignment was defective.

Even if the court assumed that Ms. Rogers lacked authority to execute the 2020 Assignment, Lord would not have standing to challenge the effectiveness of the Assignment. "New Hampshire law recognizes the general rule that a debtor cannot interpose defects or objections to an assignment which merely render the assignment voidable at the election of the assignor or those standing in his shoes."[13] Galvin v. EMC Mortg. Corp., 50 F. Supp. 3d 70, 77 (D.N.H. 2014) ("Galvin II") (quoting Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2013 WL 1386614, at *9 (D.N.H. Apr. 4, 2013)). "[A] claim that a corporate officer who executed the assignment has exceeded the scope of his or her authority" is the "type of claim [that] merely renders an assignment voidable at the election of the assignor." Id. at 78. In the instant case, there

[13] In her Memorandum of Law in Support of Summary Judgment, Lord cites Juárez v. U.S. Bank Nat'l Ass'n, No. 11-12231-RWZ, 2013 U.S. Dist. LEXIS 168913, at *15-17 (D. Mass. Nov. 26, 2013) for the proposition that "[a]n assignment of [a] mortgage signed by a person who is not an officer of the assignor, without evidence of a validly delegated power of attorney, is insufficient as a matter of law to establish a valid assignment[.]" Doc. No. 38-1 at pg. 6. However, Lord subsequently conceded that Juárez was miscited and disclaims any reliance on that case. Doc. No. 44 at pg. 9. In any event, as described above, Lord lacks standing to challenge the validity of the 2020 Assignment under controlling New Hampshire law.

is no indication that MERS, the assignor, ever renounced the 2020 Assignment. Consequently, Lord lacks the ability to challenge its validity.

B. The Validity of the 2023 Assignment

Pursuant to the 2023 Assignment, U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, assigned the Mortgage to its successor-in-interest, U.S. Bank as Trustee. Doc. No. 36-6 at pg. 1. The 2023 Assignment was signed by Donna Valenzano, a Senior Servicing Operations Specialist, and verified by a Notary Public in the State of Florida. Id. at pgs. 1-2. Lord alleges that the 2023 Assignment is invalid because the defects in the 2020 Assignment created a gap in the chain of title to the Mortgage.[14] See Doc. No. 13 at ¶¶ 62-72. For the reasons described above, however, Lord cannot establish that the 2020 Assignment was ineffective. Accordingly,

---

[14] In her Reply in Support of Motion for Summary Judgment, Lord notes that the 2023 Assignment was executed by NewRez LLC, and that PHH failed to explain "under what authority NewRez [was] acting." Doc. No. 44 at pg. 8. The Notary Public who notarized the 2023 Assignment explained that it was signed "by Donna Valenzano as Senior Servicing Operations Specialist of PHH MORTGAGE CORPORATION SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC as Attorney-in-Fact for NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING as Attorney-in-Fact for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR [RASC SERIES 2005-AHL1], who, as such Senior Servicing Operations Specialist being authorized to do so, executed the [2023 Assignment] for the purposes therein contained." Doc. No. 36-6 at pg. 2. On its face, therefore, the 2023 Assignment shows that Ms. Valenzano executed the Assignment on behalf of U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, and that she had authority to do so. Moreover, there is no indication that U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, ever challenged Ms. Valenzano's authority to execute the 2023 Assignment or otherwise challenged the Assignment's validity. Therefore, Lord lacks the ability to challenge the 2023 Assignment based on PHH's failure to present evidence describing NewRez's relationship to the assignor or its authority to execute the Assignment. See Galvin II, 50 F. Supp. 3d at 77-78 (explaining that under New Hampshire law, "a debtor cannot interpose defects or objections to an assignment which merely render the assignment voidable at the election of the assignor[,]" and that "a claim that a corporate officer who executed the assignment has exceeded the scope of his or her authority . . . [is the] type of claim [that] merely renders an assignment voidable at the election of the assignor.").

there is no support for her allegations regarding the 2023 Assignment, and PHH is entitled to summary judgment on this issue as well.

## II. Timing of PHH's Servicing and Collection Activity

In addition to her challenge to the 2020 and 2023 Assignments, Lord argues that PHH lacks authority to enforce the Mortgage because the undisputed facts establish that "PHH began servicing and collection activity more than one year before any assignment of the mortgage was executed or recorded, and more than four years before the only power of attorney produced by Defendant, dated June 1, 2023." Doc. No. 38-1 at pgs. 3-4 (citation omitted). Thus, Lord maintains, without citing any supporting legal authority, that "a party engaged in debt collection must possess lawful authority at the time the collection activity occurs, not acquire it retroactively through a later assignment or subsequently executed agency instrument."[15] Doc. No. 39 at pg. 3. Because PHH began servicing the Mortgage and collecting payments thereunder beginning on

[15] Relying on Juárez v. U.S. Bank Nat'l Ass'n, No. 1112231-RWZ, 2013 WL 6195794 (D. Mass. Nov. 26, 2013) and U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011), Lord argues that "[c]ourts in this Circuit have consistently held that standing and enforcement authority must exist at the time of the challenged conduct and cannot be supplied after the fact." Doc. No. 39 at pg. 3. It appears that Lord miscited Juárez, which should be cited as Juárez v. U.S. Bank Nat'l Ass'n, No. 11-10318-DJC, 2014 WL 815343 (D. Mass. Mar. 1, 2014). Moreover, neither of these cases supports Plaintiff's assertion that PHH lacked authority to service the Mortgage and collect payments thereunder prior to the date of the 2020 Assignment. As an initial matter, both cases applied Massachusetts state law, which is not controlling in this case. See Juárez, 2014 WL 815343, at *3-4; Ibanez, 458 Mass. at 645-51. Furthermore, both cases addressed the question whether a foreclosing entity obtained a valid assignment of the mortgage before taking steps to foreclose on the property at issue. See Juárez, 2014 WL 815343, at *4 (finding that plaintiff's proposed amended claims were plausible where she alleged, *inter alia*, that defendants engaged in a wrongful foreclosure by failing to produce evidence of a pre-foreclosure assignment giving defendant the right to foreclose on the mortgage); Ibanez, 458 Mass. at 653 (ruling that under Massachusetts law, a foreclosing entity must have an assignment of the mortgage at the time of the notice of sale and foreclosure). Here, the undisputed facts establish that PHH did not take any steps to foreclose on the Property until 2023, when Korde & Associates, P.C. informed Lord that PHH, "as servicer for U.S. Bank National Association, as Trustee for [RASC Series 2500 AHL1,] referred [her] loan for foreclosure proceedings." Doc. No. 44 at pgs. 19-20.

April 1, 2019, one year before the date of the 2020 Assignment, Lord reasons that PHH lacks the standing necessary to enforce the Mortgage. See Doc. No. 38-1 at pgs. 3-5; Doc. No. 39 at pgs. 2-3. PHH argues that Lord is barred from pursuing this claim because she did not include it in her Amended Complaint. Doc. No. 40 at pgs. 2-3; Doc. No. 42 at pgs. 11-12. It also argues that even if she could pursue such a claim, her challenge to Defendant's pre-assignment conduct is time-barred. Doc. No. 40 at pg. 3. This court finds that Lord's failure to plead facts supporting this theory of liability against PHH precludes her claim regarding the timing of PHH's actions.

"The fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008)). It follows that a plaintiff "may not 'raise new unadvertised theories of liability for the first time in [connection with] a motion for summary judgment.'" Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 76 (1st Cir. 2016) (quoting Calvi v. Knox Cty., 470 F.3d 422, 431 (1st Cir. 2006)); see also Kunelius v. Town of Stow, 588 F.3d 1, 18-19 (1st Cir. 2009) (affirming district court's refusal to consider claim raised for the first time in connection with cross-motions for summary judgment). "Allowing a plaintiff to proceed on new, unpled theories after the close of discovery would prejudice defendants, who would have focused their discovery efforts on the theories actually pled." Miranda-Rivera, 813 F.3d at 76. Lord's challenge to PHH's authority to foreclose on the Mortgage, based on the timing of PHH's debt collection activity, violates these principles.

In her Amended Complaint, Lord alleges that PHH "lacks the authority to arrange and conduct a non-judicial foreclosure of Plaintiffs' [P]roperty on behalf of U.S. Bank [as Trustee] because gaps in the chain of assignments render U.S. Bank [as Trustee's] status as an assignee

void." Doc. No. 13 at ¶ 56. She then alleges facts challenging MERS' ability to assign the Mortgage due to New Hampshire Accredited Home Lenders' administrative suspension, as well as facts relating to Tracy Rogers' execution of the 2020 Assignment. See id. at ¶¶ 57-71. However, Lord fails to allege any facts challenging PHH's authority to service the Mortgage beginning in 2019. See id. at ¶¶ 23-87. Nor does she claim that the timing of PHH's servicing activities deprived it of the ability to enforce her Mortgage obligations. See generally id. Accordingly, Lord's assertion that PHH lacks authority to enforce the Mortgage because it began servicing the Mortgage and collecting payments thereunder before any relevant assignment of the Mortgage took place is barred as a matter of law. Lord cannot rely on this argument to support her motion for summary judgment or defeat PHH's motion for summary judgment.[16]

**III. Absence of Documents Identifying Plaintiff's Loan as a Trust Asset**

PHH maintains that Plaintiff's loan is held by RASC Series 2005-AHL1, a securitized trust. Doc. No. 43 at ¶ 46. Lord argues that PHH is not entitled to summary judgement because it cannot establish that the trust owns or holds her mortgage loan. See Doc. No. 38-1 at pgs. 9-10; Doc. No. 44 at pgs. 7-8. PHH disputes this assertion and contends that Lord's arguments regarding the trust are insufficient to undermine U.S. Bank as Trustee's status as the Mortgage holder. Doc. No. 42 at pgs. 10-11. This court finds that Lord's arguments on this issue are unavailing for the reasons that follow.

Lord first contends that PHH is not entitled to summary judgment because it "produced no document demonstrating that Plaintiff's loan was ever conveyed to or listed as an asset of the purported trust RASC Series 2005-AHL1." Doc. No. 38-1 at pg. 9 (citation omitted); see also

[16] In light of this court's conclusion that Lord's timing argument is barred, it is unnecessary at this time to address Defendant's assertion that any such claim is precluded by the applicable statute of limitations. See Doc. No. 40 at pg. 3.

Doc. No. 44 at pg. 7. However, PHH submitted documents – namely, the 2020 and 2023 Assignments – demonstrating that MERS assigned the Mortgage to U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, and that U.S. Bank National Association, as Trustee for RASC Series 2005-AHL1, assigned the Mortgage to U.S. Bank as Trustee, as "Successor-in-Interest to U.S. Bank National Association, as Trustee for [RASC Series 2005-AHL1]." Doc. No. 36-5 at pg. 1 (emphasis and capitalization omitted); Doc. No. 36-6 at pg. 1(emphasis and capitalization omitted). Accordingly, Lord's assertion that PHH failed to produce evidence showing that her mortgage loan was conveyed to the trust is inconsistent with the undisputed facts in the record.

Lord also contends that "[a] failure to produce a mortgage loan schedule or other documentary evidence identifying the plaintiff's loan as an asset of the trust is fatal to a claim of ownership." Doc. No. 38-1 at pg. 9. This argument is similarly misplaced. In support of her argument, Lord relies on the Supreme Judicial Court of Massachusetts' decision in U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011), a matter that involved "two consolidated appeals of cases arising out of quiet title actions brought by U.S. Bank and Wells Fargo, respectively, after they each bought back a property they had foreclosed." Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 278 (1st Cir. 2013). In Ibanez, the court determined that the banks "failed to show they held the mortgages at the time they foreclosed, and thus their titles were null and void." Id.

Significantly, in connection with its decision, the Ibanez court explained that, under Massachusetts law, "the foreclosing entity must hold the mortgage at the time of the [foreclosure] notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale[.]" Ibanez, 458 Mass. at 651. It further ruled that to make this showing, "[a] foreclosing entity may provide a complete chain of

assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage." Id. Alternatively, "[w]here a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder." Id. In short, the court concluded that there is more than one way to make the "modest showing" necessary to establish that an entity holds a mortgage, one of which consists of the production of the relevant mortgage assignments. See id. at 650-51. Under Ibanez, therefore, PHH's submission of the 2020 and 2023 Assignments is sufficient to make the requisite showing.

Lord's final argument regarding the RASC 2005 AHL1 trust pertains to the termination of the trust's registration with the Securities and Exchange Commission ("SEC"). See Doc. No. 38-1at pgs. 9-10. The undisputed facts show that on January 20, 2006, the trust filed a "Certification and Notice of Termination of Registration" with the SEC indicating that it was no longer registered with that agency. See Doc. No. 38-13 at pg. 3; Doc. No. 43 at ¶ 47. Lord argues that, as a result, PHH cannot show that the trust continued to exist and was capable of receiving or holding her mortgage loan. Doc. No. 38-1 at pg. 10. However, courts considering similar arguments have ruled that registration with the SEC has no effect on a trust's legal existence, and de-registering with the SEC does not terminate the trust. See, e.g., Ray v. Deutsche Bank Nat'l Tr. Co. as Tr. for FFMLT Tr. 2005-FF8 Mortg. Pass-Through Certificate Series, No. 2:17-cv-02384-JAD, 2020 WL 5230721, at *1 (D. Nev. Sept. 1, 2020) ("Whether the trust is registered with the SEC has nothing to do with its legal existence, and de-registering the trust doesn't terminate its existence." (footnote omitted)); Gorgoni v. OneWest Bank, FSB, No. 11 C 08738, 2013 WL 1278475, at *1 (N.D. Ill. Mar. 28, 2013) ("Whether a mortgage-backed security trust is registered with the SEC has nothing

at all to do with its legal existence, and de-registering the trust does not terminate the trust's existence."). Because PHH has shown that the Mortgage was assigned to U.S. Bank as Trustee, it has established its status as the Mortgage holder with authority to enforce the terms of the Mortgage.

## IV. Dispute Regarding U.S. Bank as Trustee's Ownership of the Note

Lord claims that PHH violated the FDCPA and the UDUCPA by threatening to foreclose on the Property even though U.S. Bank as Trustee never obtained possession of the Note. See Doc. No. 13 at ¶¶ 72, 82-84; Doc. No. 38-1 at pgs. 1-2, 7-9; Doc. No. 39 at pg. 12. Specifically, Lord alleges that the allonges purporting to transfer the Note were ineffective because they were not in proper form, were not attached to the Note, and did not include proper endorsements. Doc. No. 13 at ¶¶ 72-81. Additionally, she contends that PHH's failure to produce the original Note, provide evidence of the Note's physical location, establish a chain of custody, and present sufficient documents to show that Plaintiff's loan is among the assets held by U.S. Bank as Trustee for the RASC Series 2005-AHL1 trust, defeats Defendant's claim of authority to enforce the Note. See Doc. No. 38-1 at pgs. 8-10; Doc. No. 39 at pgs. 7-9. PHH contends that these claims fail and that it is entitled to judgment as a matter of law on these issues because U.S. Bank as Trustee, as the holder of Lord's Mortgage, is not required to hold the Note in order to foreclose on the Property, and because the undisputed facts demonstrate that U.S. Bank as Trustee is the Noteholder pursuant to a valid series of allonges. Doc. No. 36-1 at pg. 8-11; Doc. No. 42 at pgs. 7-9. This court agrees that U.S. Bank as Trustee has authority to foreclose on the Mortgage regardless of whether it holds the Note, and that PHH's motion for summary judgment should be allowed with respect to these claims.

The Mortgage provides that the Lender may invoke "the Statutory Power of Sale and any other remedies permitted by Applicable Law" if the Borrower fails to cure a default following notice and an opportunity to cure or challenge the default in court.[17] See Doc. No. 36-4 at ¶ 22 (emphasis omitted). Under New Hampshire law, "[t]he words 'statutory power of sale' shall be understood as giving the mortgagee and executors, administrators, successors and assigns the right, upon any default of the performance of . . . any . . . condition contained in the mortgage, to foreclose by sale under the provisions of RSA 479:25-27-a inclusive." RSA 477:29, III. RSA 479:25, in turn, "permits 'the mortgagee or his assignee' to 'give such notices and do all such acts as are authorized or required by the power'" to foreclose by sale. Galvin II, 50 F. Supp. 3d at 75 (quoting RSA 479:25).

In Bergeron, the Supreme Court of New Hampshire held that "an agent of the noteholder may properly institute foreclosure proceedings under RSA 479:25." Bergeron, 168 N.H. at 68. It also held that "language in the mortgage naming the mortgagee as 'nominee for Lender and Lender's successors and assigns' conclusively establishes the requisite agency relationship." Castagnaro v. Bank of N.Y. Mellon, 168 N.H. 521, 524 (2016) (quoting Bergeron, 168 N.H. at 69-70). Therefore, where, as here, the mortgage at issue expressly grants MERS, "solely as nominee

[17] The Mortgage provides in relevant part as follows: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default may be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law . . . ." Doc. No. 36-4 at ¶ 22 (emphasis in original).

for Lender and Lender's successors and assigns" the power of sale and "the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [mortgaged property,]" Bergeron, 168 N.H. at 70 (alteration in original) (internal quotations omitted), "the language of the Mortgage alone conclusively establishes an agency relationship between . . . [an] assignee of MERS, and any downstream assignee of [New Hampshire Accredited Home Lenders] that held the Note at the commencement of foreclosure." Bergeron, 168 N.H. at 69 (quotations and citation omitted). Because the record establishes that U.S. Bank as Trustee is the assignee of MERS pursuant to the 2020 Assignment and the 2023 Assignment, this court concludes that U.S. Bank as Trustee "has the authority, as agent of the noteholder, to exercise the power of sale" and foreclose on Plaintiff's Mortgage without the need to establish that it also holds the Note.[18] See id. at 71.

## V. Claim Regarding PHH's Reinstatement Quote

Lord claims that PHH made misleading and deceptive representations about the status of her debt, in violation of 15 U.S.C. § 1692e(2)(A) of the FDCPA, by sending conflicting information about her ability to reinstate her loan. Doc. No. 13 at ¶¶ 44-50. Section 1692e(2)(A) provides in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "[t]he false representation of . . . the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). Lord alleges that PHH's May 17, 2024 Reinstatement Quote falsely represented the legal status of her mortgage debt by "holding out the possibility of reinstatement when this dispensation was not actually available as the [N]ote had been accelerated six months earlier." Doc. No. 13 at ¶ 46.

[18] In light of this court's conclusion that U.S. Bank as Trustee has authority under the Mortgage to foreclose on the Property, it is unnecessary at this stage to resolve the parties' dispute as to whether U.S. Bank as Trustee holds the Note.

Specifically, Lord challenges language appearing at the end of the "Restatement Quote," in a section of the document labeled "Important Notices." See id. at ¶ 47; Doc. No. 36-15 at pg. 6. Therein, PHH informed Plaintiff as follows: "Please also note, notwithstanding the good-through date expressed on this reinstatement quote, if a Notice of Acceleration is sent for this account, reinstatement funds will no longer be accepted after such notice has been sent." Doc. No. 36-15 at pg. 6. Lord alleges that "[t]his notice that the reinstatement payment would no longer be accepted after a notice of acceleration was served upon borrowers, is deceptive and misleading because PHH had already instructed its attorney to 'accelerate the entire indebtedness and declare the entire balance due and payable forthwith and without further notice[.]'" Doc. No. 13 at ¶ 48 (quoting the Acceleration Notice). Thus, Lord contends that she was unable to reconcile PHH's proposal to reinstate her mortgage loan upon receipt of the amount listed in the May 17, 2024 Reinstatement Quote with the November 21, 2023 Acceleration Notice. See id. at ¶¶ 48-50. PHH argues that this claim ignores the plain language of the November 21, 2023 Acceleration Notice and the May 17, 2024 Reinstatement Quote, which when read in their entirety, demonstrate that "the disclosed reinstatement figure is valid until it expires on its terms or a subsequent Notice of Acceleration is sent." Doc. No. 36-1 at pg. 13. Accordingly, PHH contends that there was no FDCPA violation.

"[F]or FDCPA purposes, a collection letter is to be viewed from the perspective of the hypothetical unsophisticated consumer." Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103 (1st Cir. 2014). "The standard protects 'all consumers, including the inexperienced, the untrained and the credulous.'" Id. at 103-04 (quoting Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997)). "Even so, the standard remains an objective one, which preserves an element of reasonableness. A debt collector will not be held liable based on

an individual consumer's chimerical or farfetched reading of a collection letter." Id. at 104. In conducting the requisite inquiry, the court must examine the collection letter as a whole. Id. ("In conducting the requisite inquiry, we examine the entire collection letter.").

Applying the standard of the unsophisticated consumer, this court finds that PHH's representations were neither deceptive nor misleading. In their November 21, 2023 Acceleration Notice, PHH's attorneys notified Lord and LeClerc as follows:

> The Mortgagee has advised our office that [the] loan is in default and you have failed to cure the default. You are hereby notified that the Mortgagee has accelerated the entire indebtedness and declares the entire balance due and payable forthwith and without further notice. The Mortgagee intends to foreclose the Mortgage under the Power of Sale for breach of the conditions of the loan documents and exercise any other rights available under applicable law.

However, they also advised Lord that "[i]f you would like to reinstate or pay off your loan, please contact this office and we will request a reinstatement or pay-off quote for your loan from the Mortgage Servicer." Doc. No. 36-14. Even an unsophisticated consumer would understand from this language that the mortgagee was offering the consumer an opportunity to reinstate a defaulted loan notwithstanding the mortgagee's decision to accelerate the debt.

The record demonstrates that Plaintiff requested a reinstatement quote, and that on May 17, 2024, PHH sent Plaintiff the Reinstatement Quote in response to her request. See Doc. No. 36-15 at pg. 3 ("This letter is in response to a request we received for a reinstatement quote on the above referenced account."). As detailed therein, PHH provided Lord with a breakdown of the total amount required to reinstate her mortgage account, along with a list of other amounts that remained outstanding on the account. Id. at pgs. 3-4. It also informed Lord that the total amount due to reinstate the account "**must be remitted no later than 06/16/2024**," and that "**[i]f funds are not received by 06/16/2024, additional funds may be required** to fully reinstate the account." Id. (emphasis in original). Additionally, PHH warned Plaintiff that "[i]f the [M]ortgage

is not reinstated and the payments fall farther behind, we may refer this mortgage to foreclosure. If the account is already in foreclosure, we may continue with the foreclosure proceedings." Id. at pg. 5. A reasonable jury viewing these communications from the perspective of an unsophisticated consumer would understand that PHH was giving Lord and her husband until June 16, 2024 to pay the funds necessary to reinstate their mortgage account.

The challenged language contained in the Important Notices section of the Reinstatement Quote does not alter this reading of PHH's communications. In that section, PHH informed Plaintiff that "notwithstanding the good-through date" set forth in the Reinstatement Quote, "if a Notice of Acceleration *is sent* for this account, reinstatement funds will no longer be accepted after such notice has been sent." Id. at pg. 6 (emphasis added). When viewed in light of Korde & Associates' and PHH's representations regarding steps Lord could take to reinstate her mortgage account, PHH's use of the words "is sent" rather than "was sent" or "has been sent" can only reasonably be interpreted as forward looking. Even an unsophisticated consumer would understand that the reinstatement would remain open until June 16, 2024, or until PHH or its attorneys sent Lord a new Notice of Acceleration. Therefore, this court recommends that PHH's motion for summary judgment be granted and that Lord's motion for summary judgment be denied with respect to this claim.

## CONCLUSION

For all the reasons detailed herein, this court recommends that the district judge grant PHH Mortgage Corporation's Motion for Summary Judgment (Doc. No. 36) and deny Plaintiff's Motion for Summary Judgment (Doc. No. 38). Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. The fourteen day period may be extended upon motion. Failure to file any objection within the specified time waives the right to

appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

Talesha L. Saint-Marc
United States Magistrate Judge

August 13, 2026

cc: Tammy Lord, pro se
Counsel of Record